**Xiaohan DU, Plaintiff,**

v.

**Michael CHERTOFF, Emilio Gonzalez, Rosemary Melville, and Robert Mueller III, Defendants.**

No. C 08–00902 WHA.

United States District Court, N.D. California.

June 2, 2008.

Frank Man–Kit Tse, Law Offices of Frank M. Tse, San Francisco, CA, for Plaintiff.

Ila Casy Deiss, Melanie Lea Proctor, United States Attorney's Office, San Francisco, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND VACATING HEARING

WILLIAM ALSUP, District Judge.

### INTRODUCTION

In this naturalization action, plaintiff Xiaohan Du filed a complaint for writ of mandamus against defendants Michael Chertoff, secretary of the Department of Homeland Security, Emelio Gonzalez, director of United States Citizenship and Immigration Services, Rosemary Melville, district director of the San Francisco United States Citizenship and Immigration Services, and Robert Mueller III, the director of the Federal Bureau of Investigation, for delays relating to the adjudication

of plaintiff's naturalization application. Defendants move to dismiss the complaint for lack of subject-matter jurisdiction and for the failure to state a claim upon which relief can be granted. For the reasons stated below, the motion is GRANTED.

## STATEMENT

The well-pled allegations in the complaint are accepted as true. Plaintiff Xiaohan Du has been a lawful resident of the United States since December 2000. On May 4, 2006, he filed a N–400 application for naturalization along with the proper filing fee and biometric processing fee. The United States Citizenship and Immigration Service issued him a notice of receipt on May 15, 2006. Mr. Du then completed his biometric processing on May 30, 2006, pursuant to a fingerprinting notification sent by the Department of Homeland Security. He has not been notified to be re-fingerprinted or to have his biometrics processing redone.

Because Mr. Du lives in Fremont, California, his naturalization interview would have taken place in the San Francisco district of the USCIS. According to the USCIS website, dated January 15, 2008, N–400 naturalization applications in San Francisco should be completely processed if they were filed before June 19, 2007 (Compl.Exh. 4). Mr. Du noticed that his application fell outside the normal processing times, so he called the USCIS customer-service number. The USCIS wrote him a letter, dated January 23, 2007, stating (Compl.Exh. 5):

> The processing of your case has been delayed. A check of our records establishes that your case is not yet ready for decision, as the required investigation into your background remains open.

> Until the background investigation is completed, we cannot move forward on your case. These background checks are required to be completed on all applicants who apply for the immigration benefit you are seeking. We will make every effort to make a decision on this case as soon as the background checks are complete. If you do not receive a decision or other notice of action from us within 6 months of this letter, please contact us by calling our customer service number provided below.

About six months later, Mr. Du called USCIS to check on the status of his application. USCIS responded with another letter saying that the background check had not yet been completed (Compl.Exh. 6). To date, USCIS has not scheduled a preliminary interview for Mr. Du in history, civics, and English.

On February 12, 2008, plaintiff filed a complaint for writ of mandamus, claiming that his application for naturalization had been unlawfully delayed by defendants. He says that he is eligible for naturalization and, had defendants properly followed and implemented the relevant statutes, he would have already been approved for naturalization. The Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 (federal question jurisdiction), 28 U.S.C. 2201 (declaratory judgment), and 5 U.S.C. 701 (Administrative Procedures Act). Mr. Du requests an order remanding his application to the USCIS, requiring the USCIS to adjudicate his naturalization application within 30 days and awarding reasonable costs. Defendants move to dismiss the complaint pursuant to FRCP 12(b)(1) (lack of subject-matter jurisdiction) and FRCP 12(b)(6) (failure to state a claim upon which relief can be granted).

## ANALYSIS

Defendants move to dismiss for lack of subject-matter jurisdiction, pursuant to FRCP 12(b)(1). There are two types of attacks on subject-matter juris-

diction: facial and factual. " 'In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.' If the moving party converts 'the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.' " *Wolfe v. Strankman,* 392 F.3d 358, 361 (9th Cir.2004).[1]

■ Here, defendants assert a factual attack on subject-matter jurisdiction. Pursuant to the Mandamus Act, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a *duty owed to the plaintiff.*" 28 U.S.C. 1361 (emphasis added). "Mandamus writs, as extraordinary remedies, are appropriate only when a federal officer, employee, or agency owes a nondiscretionary duty to the plaintiff that is 'so plainly prescribed as to be free from doubt.' " *Stang v. IRS,* 788 F.2d 564, 565 (9th Cir. 1986).

■ The APA and Declaratory Judgment Act, on the other hand, do not confer independent jurisdictional bases. In *Califano v. Sanders,* 430 U.S. 99, 104–05, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Supreme Court held that the APA did not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action. The Ninth Circuit further stated, "The APA, however, does not provide an independent jurisdictional

basis; it only prescribes the standards for reviewing agency action once jurisdiction is otherwise established." *Staacke v. U.S. Secretary of Labor,* 841 F.2d 278, 282 (9th Cir.1988). Similarly, the DJA does not provide an independent jurisdictional ground. "[T]he operation of the Declaratory Judgment Act is procedural only. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). To proceed further with this action, Mr. Du would have to establish mandamus jurisdiction.

■ "Mandamus jurisdiction exists when a plaintiff has a clear right to relief, a defendant has a clear duty to act and no other adequate remedy is available. This duty must be 'ministerial and so plainly prescribed as to be free from doubt.' " *Piledrivers' Local Union No. 2375 v. Smith,* 695 F.2d 390, 392 (9th Cir.1982). In *Piledrivers' Local Union,* the Ninth Circuit noted, "Appellees [the attorney general, associate attorney general, and commissioner of the Immigration and Naturalization Service] argue that the district court lacked subject matter jurisdiction because their statutory duty is not clearly defined. In *Knuckles v. Weinberger,* 511 F.2d 1221 (9th Cir.1975), this court held that jurisdiction in a mandamus action is not lacking even though the statute requires construction to determine the duties it creates. If the appellees' duty is clear after the court interprets the statute, the court has jurisdiction. We, therefore, hold that this court has jurisdiction to determine whether the appellees owe a duty to appellant, and if so, the nature of that duty." *Ibid.*

---

1. Unless indicated otherwise, internal citations are omitted from all cites.

In the instant action, Mr. Du requests that the Court issue a mandate remanding the application to USCIS and ordering it to adjudicate the application within 30 days of the order. The main question here is whether this duty is clear after the relevant statute is interpreted. If it were, this order could exercise subject-matter jurisdiction. Defendants of course contend that the duty is unclear; Mr. Du fails to establish the existence of a nondiscretionary, ministerial duty. This order agrees with defendants.

"The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. 1421. On March 1, 2003, the Department of Homeland Security and the USCIS assumed responsibility for these applications, and the discretion formerly vested in the Attorney General was conferred to the Secretary of Homeland Security. *See* 6 U.S.C. 271(b); 6 U.S.C. 551(d).

"Before a person may be naturalized, an employee of the Service, or of the United States designated by the Attorney General [now the Secretary of Homeland Security], shall conduct a personal investigation of the person applying for naturalization." 8 U.S.C. 1446(a). According to 8 C.F.R. 335.1:

> Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant. The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application. The district director may waive the neighborhood investigation of the applicant provided for in this paragraph.

*See also* 8 C.F.R. 335.2 (requiring "[c]ompletion of criminal background checks before examination"). In short, after an alien applies for naturalization, the USCIS and FBI must conduct various security and background checks. These checks currently include: (i) an interagency border inspection system name check; (ii) an FBI fingerprint check; and (iii) FBI name checks (Def. Exh. A at ¶ 6).

Congress has explicitly stated that no naturalization application can be adjudicated until the INS has received the results of the background check. "[D]uring fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed, except for those exempted by regulation as of January 1, 1997." Depts. of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act of 1998, Pub.L. 105–119, 111 Stat. 2440, 2448–49. In an update dated February 20, 2007, the USCIS stated that it no longer requested that the FBI expedite a name check unless "the case meets one of the other approved criteria, including: (1) Military deployment; (2) Age-out cases not covered under the *Child Status Protection Act,* and applications affected by sunset provisions such as diversity visas; (3) Significant and compelling reasons, such as critical medical conditions; and (4) Loss of social security benefits or other subsistence at the discretion of the USCIS District Director" (Def.Exh. B). The USCIS therefore has discretion in determining whether or not to request expedited service from the FBI.

Mr. Du does not dispute any of this. In *Stang*, the Ninth Circuit affirmed the district court's dismissal of the case for lack of mandamus jurisdiction, reasoning that the IRS had no "nondiscretionary duty" to assess the plaintiff's taxes on demand. *Stang*, 788 F.2d at 565. Similarly here, because Mr. Du is unable to establish that defendants have a nondiscretionary, ministerial duty to expedite the background check (and therefore the naturalization-adjudication process), this order finds that there is no mandamus jurisdiction.

In a brief opposition paragraph, Mr. Du only relies upon two cases to assert subject-matter jurisdiction. In *Ahmed v. Dept. of Homeland Security*, 328 F.3d 383, 386 (7th Cir.2003), the Seventh Circuit stated that "it is necessary to distinguish between the court's power to adjudicate the petition and the court's authority to grant relief. Only the former necessarily implicates the subject-matter jurisdiction of the court; the latter will depend on whether the statute on which the plaintiff is relying imposes a clear duty on the officer or employee of the United States." *Ahmed* is inapposite, however. The Seventh Circuit focused on whether mandamus was unavailable because no effective relief could be granted, one of the three prerequisites for mandamus relief. Here, this order examines whether or not there is mandamus *jurisdiction* (and not relief).

Mr. Du also relies upon *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). "The failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.* at 682, 66 S.Ct. 773. He argues that in resolving the threshold issue of whether a court has jurisdiction to consider the merits of a mandamus action, "the allegations of the complaint, unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction." *Ahmed*, 328 F.3d at 386. Again, Mr. Du's reliance on the *Bell* decision is misplaced. This order is not "tackling the merits"; it is not determining whether or not plaintiff is entitled to mandamus relief. Rather, this order evaluates whether a district court has the power to even adjudicate the motion. It concludes that there is no mandamus jurisdiction because USCIS has no nondiscretionary duty to expedite FBI background checks. Accordingly, defendants' motion to dismiss is granted. This order need not address whether or not plaintiff has stated a claim upon which relief can be granted.[2]

## CONCLUSION

Because there is a lack of mandamus jurisdiction in this action, the motion to dismiss is GRANTED. The hearing set for June 5, 2008, is VACATED.

**IT IS SO ORDERED.**

---

**2.** Under certain circumstances, an applicant may seek review in a federal district court for delays in processing naturalization applications. For example, Section 1447(b) of Title 8 of the United States Code provides: "[i]f there is a failure to make a determination under section 1446 of this title before the end of the 120–day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." *See also Ahmadi v. Chertoff*, 2007 WL 3022573 (N.D.Cal.2007) (Alsup, J.). This statute does not apply in the instant action, however. Mr. Du has not yet had his interview, so there is no running of the 120–day clock. Nor does plaintiff point to any other time-specific statute that mandates a clear duty for the USCIS to expedite FBI background checks *before* an interview.